* * * * * * * * * * * ISSUES
1. Whether Plaintiff is entitled to temporary total disability compensation from the date she stopped working for Defendant on February 4, 2006.
2. Whether Plaintiff is estopped from seeking total disability compensation at this time due to her prior request for hearing seeking permanent partial disability compensation pursuant toDaughtry v. Cherry Hospital, ___ N.C. App. ___, ___ S.E.2d ___, (2009).
3. Whether Plaintiff should be sanctioned pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Upon review of the competent evidence of record, with reference to the errors assigned, and finding good grounds to receive further evidence, or to rehear the parties or their *Page 2 
representative, the Full Commission, upon reconsideration of the evidence AFFIRMS IN PART and REVERSES IN PART the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which the parties entered into in the Pre-trial Agreement and at the hearing as:
 STIPULATIONS
1. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employee-employer relationship existed between Plaintiff-employee and Defendant.
3. On all relevant dates, Defendant was self-insured.
4. On August 7, 2003, Plaintiff sustained a compensable injury by accident in her job as a sworn Police Officer for Defendant.
5. Defendant accepted the claim pursuant to an Industrial Commission Form 60, signed on December 8, 2003.
6. Defendant paid total disability compensation to Plaintiff during the time she was out of work due to her right knee injury until she began her light-duty, administrative job with Defendant.
7. Following her first right knee surgery, Plaintiff returned to work for Defendant in a light-duty, administrative job in the Crime Report Writing Unit as a Police Investigation Tech, a non-sworn police position that Defendant provides to sworn police officers under light-duty restrictions from their treating physician. Plaintiff was paid her pre-injury wages in this position. *Page 3 
8. On November 14, 2005, Deputy Commissioner Chrystal Redding Stanback filed an Opinion and Award in this matter. Conclusion of Law (5) provides:
 "Although Plaintiff now works full-time for defendant in a light-duty, administrative capacity, she cannot work regular duty as a police officer. At any time, due to the continuing problems Plaintiff is experiencing with her right knee injury, Plaintiff is subject to becoming disabled from her work injury. At such time as Plaintiff becomes disabled from her injury, or unable to earn the same or greater wages as her pre-injury wages, Plaintiff is entitled to compensation at the rate of $672.30 per week, or the requisite temporary partial disability compensation rate, for as long as Plaintiff is disabled as a result of her compensable injury. N.C. Gen. Stat. § 97-29."
9. On August 7, 2003, Plaintiff's average weekly wage was $1,008.40, yielding a weekly compensation rate of $672.30.
10. Before Dr. Jerry Barron was authorized to perform her second knee surgery, Plaintiff was diagnosed with cancer in her pancreas and liver. Plaintiff received treatment in the form of medication and radiation from oncologist Dr. David Eagle. Due to the treatment for her cancer, Dr. Barron was unable to perform the arthroscopic knee surgery until Dr. Eagle stated that it was safe for her to have the surgery. Dr. Eagle explained in his deposition that Plaintiff would have to stop taking her medication for cancer treatment for at least two weeks if she had the knee surgery, which would affect her white blood count and increase the risk that her tumors would grow and that she would develop other infections.
11. On July 27, 2007, Plaintiff filed a Request for Hearing to determine the issue of her permanent partial disability rating. In light of the medical testimony following a hearing, Plaintiff filed a motion to withdraw the request for hearing. On March 18, 2008, Deputy Commissioner Phillip A. Baddour, III issued an Order that allowed Plaintiff to withdraw her request for hearing. *Page 4 
12. Plaintiff stopped working as a Police Investigation Tech on February 4, 2006 due to her illness from her cancer. She has not been able to return to that job due to her cancer.
13. Plaintiff has not been able to return to her job as a sworn police officer, initially due to her right knee injury, and later due to her right knee injury and her cancer.
14. The parties have submitted a Packet of Various Stipulated Exhibits, which is admitted into the record, and marked as Stipulated Exhibit (2) and which includes the following
 a. Industrial Commission Forms;
 b. The Opinion and Award by Deputy Commissioner Chrystal Redding Stanback filed on 14 November 2005;
 c. Defendant's Responses to Plaintiff's Discovery Requests;
 d. Plaintiff's Discovery Requests of September 26, 2008, including invoices for expert witness fees, letters and emails between Mr. Goldman and Mr. Acton;
 e. A Police Investigation Tech Job Description;
 f. A Police Officer Job Description;
 g. The Pre-Trial Agreement for the hearing previously set before Deputy Commissioner Phillip A. Baddour, III;
 h. Plaintiff's Motion to Withdraw Request for Hearing dated March 11 2008;
 i. Order Allowing Motion to Withdraw Request for Hearing;
 j. Documents from Plaintiff's personnel file;
 k. Medical records in this case; and
 l. Transcripts of the depositions of Dr. Roy Majors from 2005 and 2007, Dr. Jerry Barron from 2005 and 2007, and Dr. David Eagle from 2008. *Page 5 
15. Subsequent to the hearing, the parties entered into a Stipulation to the effect that the uncertified copies of the 2005 depositions of Dr. Majors and Dr. Barron are to be afforded the same weight as the certified originals and may be considered for all purposes that the certified copies would have been.
 * * * * * * * * * * *
Based upon the competent and credible evidence of record, as well as any reasonable inferences that may be drawn therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The November 14, 2005 Opinion and Award by Deputy Commissioner Chrystal Redding Stanback establishes that Plaintiff was a sworn Charlotte Mecklenburg Police Officer on August 7, 2003. In that capacity, Plaintiff worked as a DARE officer educating children about the dangers of drugs. At a DARE workshop on August 7, 2003, a child jumped on Plaintiff's legs causing an injury to her right knee.
2. Defendant accepted the claim pursuant to an Industrial Commission Form 60 and authorized Dr. Roy Majors to perform right knee surgery, which was undertaken on December 4, 2003. Following this surgery, Plaintiff continued to experience right knee pain, swelling and fluid, and was medically unable to return to regular duty as a police officer.
3. At her last examination with Dr. Majors on July 26, 2004, Plaintiff was informed that her continuing knee problem was unrelated to her August 7, 2003 injury, released her from his care without restrictions, and assigned a ten percent (10%) permanent partial disability rating to the right leg.
4. On May 24 and 25, 2004, Plaintiff underwent a second opinion evaluation with Dr. Jerry Barron, who opined that her continued right knee swelling, pain and fluid were related *Page 6 
to her August 7, 2003 injury or the prior related surgical procedure, and recommended a second surgery, which was not authorized by Defendant.
5. In the Opinion and Award of November 14, 2005, Deputy Commissioner Stanback assigned greater weight to the opinions of Dr. Barron than those of Dr. Majors and held that Plaintiff's chronic right knee swelling, pain and fluid were causally related to her August 7, 2003 injury by accident and the prior surgical procedure performed by Dr. Majors. Deputy Commissioner Stanback also found that at that time that Plaintiff had not reached maximum medical improvement, could not perform her regular duty as a police officer, was performing light-duty work and was in the need of additional medical treatment.
6. In Deputy Commissioner Stanback's Opinion and Award, she concluded as a matter of law that Plaintiff had returned to work for defendant in a light-duty, administrative capacity, but was unable to work in her regular job as a sworn police officer. Additionally, based upon the conclusions of law, Deputy Commissioner Stanback noted that with Plaintiff's continuing problems with her right knee injury, Plaintiff was subject to becoming disabled, at which time she would be entitled to the award of total disability compensation at the rate of $672.30 per week until such time as she returned to work or further Order of the Commission.
7. For injured police officers who could not perform their essential job duties and were on workers' compensation, Defendant had a light-duty policy pursuant to which the injured officers were placed in temporary, light-duty jobs until able to return to full-duty work. Pursuant to this policy, Plaintiff was assigned a temporary, light-duty job at her regular salary level of $52,500.00. Plaintiff worked in this capacity from January 4, 2004 to February 5, 2006. Specifically, Plaintiff's assignment was very similar to a job performed by non-sworn police investigative technicians, who were hired at a starting salary of $29,000 as of 2008. *Page 7 
8. Based upon the credible evidence of record, the temporary, light-duty job to which Plaintiff was paid her regular salary level was not a job that is ordinarily available in the local competitive job market. As such, the light-duty job was not suitable and not truly indicative of any wage earning capacity Plaintiff may have had.
9. Although the temporary, light-duty job Plaintiff performed during the period of January 4, 2004 through February 4, 2006 was not indicative of her wage earning capacity, Plaintiff sustained no diminution in her wages during this period.
10. Around the first of November 2005, prior to the filing of Deputy Commissioner Stanback's Opinion and Award on November 14, 2005, Plaintiff was diagnosed with cancer of her pancreas and liver. In early 2006, Plaintiff began chemotherapy treatment for her cancers through her oncologist, Dr. David Eagle. Plaintiff has continued to treat with Dr. Eagle since that time.
11. On March 1, 2006, when Dr. Barron learned that Plaintiff was undergoing treatment for her cancer, he refrained from performing the right knee surgery he had previously recommended because it would interfere with those treatments. Dr. Barron advised Plaintiff not to have the knee surgery until she completed her cancer treatment, and assigned a permanent partial disability rating of twenty-five (25%) to the right leg. Dr. Barron expected the rating to change following surgery, if surgery could be performed in the future.
12. Since being diagnosed with cancer, Plaintiff has not undergone the previously recommended right knee surgery, and consequently, has remained unable to return to her regular duty job as a sworn police officer due to her admittedly compensable right knee injury.
13. Plaintiff worked in her temporary, light-duty assignment with Defendant through February 4, 2006. Thereafter, Plaintiff took disability retirement in March 2006. *Page 8 
14. Dr. Eagle opines that Plaintiff has been unable to return to her regular job as a police officer since February 4, 2006 due to her admittedly compensable right knee injury and her cancer. Dr. Eagle has further opined that it is possible that Plaintiff's tumors will regress, and given that event she could undergo the knee surgery recommended by Dr. Barron in the future.
15. Plaintiff's description of the physical and psychological effects of her ongoing chemotherapy treatment is credible.
16. Based upon the totality of the medical evidence of record, Plaintiff has not reached maximum medical improvement with regards to her admittedly compensable right knee injury.
17. The compelling weight of the medical evidence establishes that Plaintiff's non-work related cancer has conjoined with and aggravated Plaintiff's work related knee injury to preclude surgical repair of her knee at this time, both conditions combining to preclude Plaintiff's employment in even light-duty positions.
18. There is insufficient evidence upon which to find that either party is subject to sanctions pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
The foregoing Stipulations and Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. On August 7, 2003, Plaintiff sustained an admittedly compensable injury by accident resulting to an injury to her right knee. N.C. Gen. Stat. § 97-2(6).
2. Defendant's contention that Plaintiff's filing of a Form 33, Request that Claim be Assigned for Hearing, requesting that permanent partial disability benefits be established *Page 9 
operated as an election of benefits precluding Plaintiff's subsequent request for determination of temporary total disability benefits is not well supported. There no credible evidence of record upon which to find that Plaintiff is estopped from pursuing a claim for total disability compensation. Daughtry v. CherryHospital, ___ N.C. App. ___, ___ S.E.2d ___ (2009).
3. Although in part the temporary, light-duty job Plaintiff performed during the period of January 4, 2004 through February 4, 2006 was not indicative of her wage earning capacity, Plaintiff sustained no diminution in her wages during this period. N.C. Gen. Stat. §§ 97-29 97-32; Saums v. Raleigh CommunityHosp., 346 N.C. 760, 487 S.E.2d 747 (1997); Peoples v. ConeMills Corporation, 316 N.C. 426, 342 S.E.2d 798, (1986).
4. Plaintiff has proven by the greater weight of the medical evidence that her non-work related cancer aggravated and conjoined with her admittedly compensable knee injury precluding surgical repair of the knee at this time. Counts v.Black Decker Corp., 121 N.C. App. 387, 465 S.E.2d 343 (1996);Errante v. Cumberland Cty. Solid Waste Mgmt.,106 N.C. App. 114, 415 S.E.2d 583 (1992).
5. Plaintiff has proven by the medical evidence supported by her testimony of physical incapacity that she is temporarily totally disabled. N.C. Gen. Stat. § 97-29.
6. As the result of her August 7, 2003 injury by accident, Plaintiff is entitled to have Defendant pay for all related medical expenses incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25 97-25.1.
7. There is insufficient evidence upon which to conclude that either party is subject to sanctions pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * * *Page 10 
Based upon the foregoing Findings of Fact and Conclusions of Law, the undersigned enters the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability benefits from February 5, 2006 and continuing until further orders of the Industrial Commission. All sums accrued to the date of this Award shall be paid in a lump sum. Prospective benefits shall be paid weekly. Both accured and prospective disability benefits are subject to the attorney fee provided for hereinafter.
2. Plaintiff shall pay a reasonable attorney fee of twenty-five percent (25%) of the accrued and prospective disability benefits awarded. For accured benefits, Defendant shall deduct the attorney fee awarded from the sums due Plaintiff and pay the same directly to Plaintiff's counsel. For prospective disability benefits, Defendant shall deduct every fourth payment from sums due the Plaintiff and pay the same directly to Plaintiff's counsel.
3. Defendant shall pay for all related medical expenses incurred or to be incurred by Plaintiff as the result of her August 7, 2003 injury by accident, subject to the provisions of N.C. Gen. Stat. § 97-25.1, when the medical bills have been approved according to established Industrial Commission procedures.
4. Defendant shall pay the costs.
S/_______________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 11 
S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
S/_______________________ LAURA KRANIFELD. MAVRETIC COMMISSIONER